# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Matthew Mungai,                                       Civil No. 23-1237 (DWF/JFD)

        Plaintiff,

v.                                                                    **MEMORANDUM**
**OPINION AND ORDER**

University of Minnesota,

        Defendant.


## INTRODUCTION

This matter is before the Court on a Motion to Dismiss *Pro Se* Plaintiff Matthew Mungai's Amended Complaint brought by Defendant University of Minnesota (the "University") (Doc. No. 28), as well as three motions to amend the Amended Complaint brought by Plaintiff (Doc. Nos. 36, 58 and 70).  For the reasons set forth below, the Court grants the University's motion and dismisses Plaintiff's Amended Complaint.[1]  In addition, the Court denies Plaintiff's motions to amend because the proposed amendments are futile.

---

[1] The Amended Complaint is the operative complaint for the purposes of this motion (Doc. No. 22).  The paragraphs in that document are not in numeric order.  Nonetheless, the Court cites to the paragraph numbers as they appear in the Amended Complaint.  In addition, because Plaintiff has filed motions to amend the Amended Complaint, the Court will occasionally reference the relevant factual allegations and will cite to the specific proposed amended complaint when doing so.

## BACKGROUND

Plaintiff Matthew Mungai is a Black man of Kenyan origin who attended the University from approximately 2019 through 2022.  (Doc. No. 22 ("Am. Compl.") ¶ 7).)  Plaintiff alleges that he was subjected to numerous incidents of racist behavior and inappropriate comments directed at him.  These include, for example, other students making finger gun motions at him, a University dining staff member making a racist statement at a hockey game, a University dining staff member sending Plaintiff a lewd text, students calling him names ("dirty," "ugly", and "nig") in class and on campus, students making fun of him, students posting an allegedly racist meme, a white student threatening Plaintiff, a white student kicking Plaintiff in the back, and a professor wrongfully accusing him of plagiarism.  (*See e.g.*, Am. Compl. ¶¶ 15-18, 20-22, 24-26, 34.)  Plaintiff further claims that he reported these incidents to the University but that nothing was done.  (*See id*. ¶¶ 15-18, 20-25, 27-29, 31-37, 38-42.)  Plaintiff submits that he became fearful and socially isolated on campus and eventually was diagnosed with a mental illness.  (*Id*. ¶ 19.)  Plaintiff alleges that his grades fell (*id*. ¶ 46) and that he was unable to complete his last college course on time and lost a lucrative offer of employment (*id*. ¶¶ 29-30).[2]

---

[2]     In subsequently proposed amended complaints, Plaintiff alleges that he is unable to work at all.  (Doc. No. 70 ("Proposed Fourth Am. Compl.") ¶ 64.)

In a Complaint filed on May 1, 2023, Plaintiff brought suit against the University.[3]

On August 3, 2023, the University filed a motion to dismiss the original complaint (Doc.

No. 16) but withdrew that motion after Plaintiff filed the Amended Complaint later that

same day.[4]  In the Amended Complaint, Plaintiff alleges that he was the victim of a series

of racially motivated incidents and seeks damages in the amount of $15,000,000.

Despite the fact that the Court has not ruled on the original motion to amend,

Plaintiff filed four additional motions to amend the Amended Complaint (Doc. Nos. 36,

51, 58, 70.)[5]  In addition, in light of the University's futility argument in its opposition to

Plaintiff's motion to amend the Amended Complaint (Doc. No. 45), Magistrate Judge

Docherty allowed Plaintiff to file a reply.  (Doc. No. 48.)  Plaintiff did not file a reply,

but instead filed a memorandum in opposition to the University's motion to dismiss the

Amended Complaint.  (Doc. No. 49.)  Presently, the University argues that its motion to

---

[3]    While the University of Minnesota is the named defendant, the Regents of the
University of Minnesota form the "body corporate" with the right to sue and be sued.  *See
Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 280 (Minn. 2004)
("The Board of Regents is the governing body of the University of Minnesota.").

[4]    Because the operative complaint is now the Amended Complaint, Plaintiff's
motion for an extension of time to respond to the first motion to dismiss (Doc. No. 15) is
properly denied as moot.

[5]    Plaintiff continued to file subsequent motions to amend.  Magistrate Judge
Docherty denied the motion filed at Doc. No. 51 without prejudice for failure to comply
with the meet and confer obligations.  (Doc. No. 57.)  Plaintiffs' motions to amend at
Doc. Nos. 36, 58 and 70 are outstanding.  The University has filed oppositions.  (Doc.
Nos. 45, 66, 76.)  Plaintiff filed a response.  (Doc. No. 77.)  The Court notes that
Plaintiff's successively filed motions to amend are confusing and difficult to follow, as he
has filed five different versions of proposed complaints and some versions contain the
same labels but different allegations.

dismiss the operative Amended Complaint should be granted and that Plaintiff's remaining motions to amend should be denied as futile.

The Court now summarizes Plaintiff's specific alleged facts as they are laid out in the Amended Complaint and the pending proposed amendments.

In February 2019, Plaintiff recalls a student reading a tweet out loud in front of other students but then saying, "oops but that's racist." (Doc. No. 39-2 ("Proposed Second Am. Compl.") ¶ 17.)  In March, another student accused Plaintiff of not being a student at the University, called him "dirty" and "referenced his race on multiple occasions." (*Id.* ¶ 18.)  In September, a student told other students that Plaintiff had never had sex. (*Id.* ¶ 19.)  In October, the same student told Plaintiff that he "should date someone from [his] own country." (*Id.* ¶ 20.)  In November, Plaintiff was walking near a light-rail station on campus when a college-aged man called him a "faggot." (*Id*. ¶ 21.)  Plaintiff asserts that he reported each incident to the University and that no action was taken. (*Id.* ¶¶ 17-21.)

In February 2020, Plaintiff's supervisor in the University dining services, who is white, allegedly said "Dark people are so out of place at hockey games.  They don't belong here." (Am. Compl. ¶ 40.)  When Plaintiff reported this, "no action was taken in regards to their employment." (*Id*.)  In April of that year, a white dining staff member sent Plaintiff an unwanted text that stated that the employee was "horny."[6] (*Id*. ¶ 15.) Plaintiff reported the text to the Equal Opportunity and Affirmative Action office, but no

---

[6]    Plaintiff alleges that this text referenced his race.  The screenshot of the text message, however, does not support this allegation.  The Court finds nothing in the text that refers Plaintiff's race.

action was taken.  (*Id.*)  In April, two students laughed at Plaintiff when he logged onto a Zoom call for class; the professor did nothing to "hold those students responsible" for their actions.  (Proposed Second Am. Compl. ¶ 24.)  In December of that year, Paul Kimani[7] yelled "Fuck you" at Plaintiff, supposedly in response to Plaintiff's complaints of discrimination against a Black candidate for president.  (Proposed Fourth Am. Compl. ¶ 25.)

The majority of the conduct that prompted Plaintiff to file this lawsuit occurred in 2021.  In March of that year, students pulled up to Plaintiff's car and made finger gun gestures at him, mimicking shooting, and making "pew pew pew" noises.  (Am. Compl. ¶ 16.)  Plaintiff reported the incident, but nothing was done.  (*Id.*)  In April, white students in one of his courses called him a racial slur, telling him he was "dirty," "ugly" and "nig" but when he reported this to "class staff," they took no action.  (*Id.* at ¶ 17.)  An Asian student said two college-aged Black people on campus, one of whom had their backpack open, were "probably doing a drug deal."  (Proposed Second Am. Compl. ¶ 28.)  In one of his computer science classes, a white student was "talking about 'racial events'" in class "almost daily," even though Plaintiff had tried to stop the conversations in the past.  (Am. Compl. ¶ 18.)  The conversations made Plaintiff uncomfortable because he was the only Black student in the class, and he believed that they were made in retaliation for his reporting prior incidents of racist behavior.  (*Id.*; Proposed Fourth Am. Compl. ¶ 28.)

---

[7]     In his proposed amended complaints, Plaintiff seeks to add additional defendants, including Paul Kimani.  The University explains that Kimani is Plaintiff's uncle and also a University staff member.  (Doc. No. 76 at 3.)

Plaintiff reported the behavior but claims that nothing changed.  (Am. Compl. ¶ 18.)
Around the same time, Plaintiff alleges that he was diagnosed with a mental illness, went
to in-person therapy, and got a recommendation for an emotional support animal.  (Am.
Compl. ¶ 19; Proposed Fourth Am. Compl. ¶ 30.)

In June 2021, a white student came over to Plaintiff and a friend as they were
talking and "made a vocalization similar to 'TTTTSSSSSSSSSSSTTTTTTT' then walked
away."  (Am. Compl. ¶ 21.)  Plaintiff understood this to be in retaliation for his reporting
racist incidents on campus.  (Proposed Fourth Am. Compl. ¶ 32.)  The same month,
Plaintiff's anthropology professor, who is white, accused Plaintiff of plagiarism.  (Am.
Compl. ¶ 21.)  When he complained, the professor said that she "knew of [Plaintiff]."
(*Id.*)  Plaintiff reported the incident to the University's Student Conflict Resolution Center
("SCRC").  (*Id.*)  The professor later refused Plaintiff's requests for an extension of due
dates for his assignments because of the harassment he was experiencing, and he took her
denial, or the University's failure to discipline her for the denial,[8] as a form of retaliation
against Plaintiff for reporting harassment.  (Am. Compl. ¶ 23; Proposed Fourth Am.
Compl. ¶¶ 32, 37.)

During the last week of his classes in July 2021, Plaintiff was subjected to
"intensifying racial and national taunts," which included "dirty," "blackie," and "monkey"
when he left his dorm.  (Am. Compl. ¶ 22.)  These caused him "a paralyzing level of

---

[8]      In some cases, such as this one, it is not clear whether Plaintiff claims the incident
itself was retaliatory, or that the University's failure to take action was retaliatory.
Because Plaintiff is asserting Title VI claims for retaliation, the Court assumes he means
the University.

fear," but when he reported them to the administration, nothing was done.  (*Id.*; Proposed Second Am. Compl. ¶ 34.)  When a fellow student "leak[ed]" Plaintiff's Tinder profile on a school social networking site, students harassed him, saying he was ugly, dirty, had never had a girlfriend, and never had sex.[9]  (Am. Compl. ¶ 22.)  A white student followed him on the social networking site LinkedIn and, after posting "I want life to get better for Black people," proceeded to harass Plaintiff using hashtags.  (Proposed Second Am. Compl. ¶ 35.)

In August, a white student told Plaintiff "u gon' die," prefacing the threat with a racial slur.  (Am. Compl. ¶ 24.)  Plaintiff believed that the University did nothing in response to his complaint about this instance in retaliation for his filing other complaints.  (Proposed Fourth Am. Compl. ¶ 39.)  A student "recorded [Plaintiff's] voice in a private conversation in the guise of a date of sorts" and posted the conversation on the University's "social networks."  (Am. Compl. ¶ 23.)  When Plaintiff called the police, Plaintiff alleges that they refused to assist him.  (*Id.*)  Again, Plaintiff believes the University did nothing because he had reported discrimination before.  (Proposed Fourth Am. Compl. ¶ 38.)

---

[9]    Later that fall, a student responded to this post, saying that Plaintiff was a "nerd that is trying to get lucky" and asked "when are you going to call me you're getting lonely" after Plaintiff accidentally clicked on her Instagram profile.  Plaintiff then posted a photo of himself with another woman on his private Instagram page.  The student responded "by posting [Plaintiff's] new photo onto University of Minnesota Social networks and [] a picture of herself on her [I]nstagram with her white boyfriend in a homogeneous white country—[I]celand."  (Am. Compl. ¶ 28.)  Plaintiff reported this incident to the University and claims that no action was taken because of retaliation for Plaintiff's prior reports.  (Proposed Fourth Am. Compl. ¶ 44.)

In September, Plaintiff alleges that a white student kicked Plaintiff in the back several times after saying "Oh my god not this guy," calling him "dirty" and using racial slurs. (Am. Compl. ¶ 25.) Plaintiff asserts that he suffered a spinal fracture, bruising, muscle spasms, stiffness, and strain as a result. (*Id.*) Plaintiff filed a police report[10] and asserts that he told university staff. Plaintiff again claims that the University did nothing in retaliation for his past reporting.

In October 2021, Plaintiff saw a meme that he found offensive on the online page of a University club. (*Id.* ¶ 20.)



Plaintiff inferred that the "Elon Musk" character was supposed to be Kanye West, "since these two are often called mirrors of each other." (*Id.*) He further inferred that he was supposed to be the "weird nerd" in the photo, because he (a) is Black, (b) is a student of the College of Science and Engineering, and (c) had defended Kanye West. (*Id.*) Plaintiff

---

[10] Opposing counsel correctly notes that the screenshot in the complaint that purportedly documents the alleged assault is a "victim information notice" issued by the Chicago Police Department that reports a battery occurring in Cook County, Illinois *not* on the University's campus. (Doc. No. 30 at 7-8.) It provides no information about the assailant or identifying the officer who took the report. (*Id.*)

believed that the poster shared the meme in retaliation for him reporting discrimination at the University.  (Proposed Fourth Am. Compl. ¶ 31.)  Plaintiff reported the meme's posting but asserts that nothing was done.  (*Id.*)[11]

At the Chicago O'Hare International Airport, through which several University students were traveling on a study abroad trip, Plaintiff alleges that the students used a racial slur to describe Plaintiff, telling him that he was "dirty," "ugly," that "he has AIDS," that he had never had sex, that he was desperate to have sex, and that he had probably never had a girlfriend.  (Am. Compl. ¶¶ 26-27.)

In December, Plaintiff gave his phone number to Paul Kovacovic, an employee at the SCRC, because Kovacovic "failed to set up a zoom meeting."  (Am. Compl. ¶ 28.)  Plaintiff started receiving "spam" texts with ads that were allegedly from Kovacovic.  (*Id.*)  When Plaintiff emailed Kovacovic about another issue, Plaintiff alleges that Kovacovic "spammed" his phone with an ad again.  (*Id.*)  "This made [Plaintiff] experience a lot of stress not knowing when Kovacovic would spam his phone again."  (*Id.*)  Plaintiff changed his phone number.  (*Id.*)  When Plaintiff asked Kovacovic about the possibility of taking an in-person class online, Kovacovic purportedly told Plaintiff to "switch schools."  (*Id.*)  Plaintiff noted that this "altercation" was "reported to the Equal Opportunity and Affirmative Action Department but no action was taken."  (*Id.*)

---

[11]     Opposing counsel correctly points out that this is a popular meme from the television show The Simpsons.  (Doc. No. 30 at 7.)  It shows a character, Apu, who is Indian, jumping in front of a bullet that a robber fires at the cashier in Kwik-E-Mart.  *The Simpsons: James Woods (Kwik-E-Mart)*, YouTube, (Oct. 4, 2015), https://www.youtube.com/watch?v=A5xA21Qoxaw.

In June 2022, a campus "student and employee" told Plaintiff that Plaintiff "probably [has] AIDS."  (Am. Compl. ¶ 32.)  Although Plaintiff reported this to the University, it did nothing out of retaliation for his previous complaints.  (*Id*.)  In July, a white University employee made shooting motions at Plaintiff using finger gun gestures, which Plaintiff understood to be "in reference to the high profile police shootings against black men with the aggressor being a White person that took place prior in the area."  (*Id*. ¶ 34.)  In one of his classes, Plaintiff noticed that an Asian student had "an edited picture of a Black person with tears and dirt as their profile picture" on the school's online learning system, and that although Plaintiff reported the profile picture to the University and his instructor, it was "not censored nor taken down."  (*Id.* ¶ 35.)

Plaintiff claims that he had another altercation with Kimani.  Kimani sent a message to Plaintiff which said "Explore Kenya" with a middle-finger emoji.  (*Id.* ¶ 36.)  When he responded to the message, Kimani "proceeded to effectively kick [Plaintiff] out of a groupchat" in which he and his peers discussed school activities.  (*Id*.)  Kimani's message made Plaintiff fearful, and he reported it to the University, which did nothing (again in retaliation for his reporting discrimination) but that the University eventually "admitted fault."  (*Id*. ¶ 36; Proposed Fourth Am. Compl. ¶ 52.)  In October 2022, Plaintiff made a report with the Minnesota Department of Human Rights.  (Am. Compl. ¶ 37.)

Plaintiff asserts that he could not attend the College of Science and Engineering's career fair in February 2023[12] because of "constant verbal harassment" and threats of violence." (*Id.* ¶ 41.)  In March, three white students and staff members called him "crazy" and used a racial slur against him. (*Id.* ¶ 42.)  Plaintiff filed this lawsuit in May 2023.

In June 2023, Plaintiff saw a racial slur drawn onto a bathroom stall in a University building, along with a "caricature with an afro and 1 tooth engraved into the bathroom mirror in the same [bathroom]." (*Id.* ¶ 44.)  Plaintiff alleges that he reported the graffiti to University staff but that it was "not removed before the end of the month." (*Id.*)  Plaintiff alleges that racist drawings and slurs like this were seemingly "everywhere he looked," but the University took only "minimal" action to remove them. (*Id.* ¶ 45.)

Plaintiff also alleges that Kimani was bothering him.  He "spammed" Plaintiff's Instagram account with emails asking him to reset his password in addition to sending an unwanted text and calling him. (Proposed Second Am. Compl. ¶¶ 57, 58.)  In a phone call to Plaintiff's mother, Kimani allegedly threatened Plaintiff with "negative consequences" and "reputational damage" because of his complaints. (*Id.* at ¶ 57.)  Plaintiff understood this to be a form of retaliation.

In September, a group of women recognized him and called him "ugly," one of them saying "I'm talking pretty loud, right?" in order to attract his attention. (*Id.* ¶ 62.)  In

---

[12]    Plaintiff makes a similar complaint about a career fair in September 2023.  Two separate University staff members refused to provide him security services "or any other form of accommodation" for him to attend the fair, "despite him getting numerous racial death threats." (Proposed Second Am. Compl. at ¶ 60.)

October, Plaintiff learned that a 2021 data breach at the University likely resulted in the dissemination of his demographic information.  (*Id.* ¶ 61.)

In the Amended Complaint, Plaintiff asserts eight causes of action against the University:  Title VI race discrimination (Count I); Section 1983 race discrimination (Count II and VII); violations of the Minnesota Human Rights Act ("MHRA") (Counts III and V); common law negligence (Count VI); violations of the Fourteenth Amendment (Count IV); Sections 1981 and 1983 claims for "retaliation" and "deprivation of rights" (Count VII); and Title IX sex discrimination (Count VIII).

## DISCUSSION

## I.   Motions to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 177, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.  The Court notes that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Even so, a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

In addition, the Court must dismiss any action over which it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  In a facial challenge under Rule 12(b)(1), the Court accepts the factual allegations in the pleadings as true and views the facts in the light most favorable to the nonmoving party, and the nonmoving party receives the same protections as it would defending a Rule 12(b)(6) motion.  *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

## II.     Title VI (Count One)

In Count One, Plaintiff alleges that the University was on notice of racial discrimination and failed to prevent future discrimination by allowing "[such] behavior to

continue and become permissible and acceptable throughout the University." (Am. Comp. ¶ 57.) Title VI prohibits discrimination on the basis of race in federally-funded programs. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). Individuals may sue under Title VI for intentional discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Plaintiff's claim is based on the alleged creation of a hostile environment.

To state such a claim under Title VI for a racially hostile environment, Plaintiff must plead facts sufficient to support a reasonable inference that a defendant was (1) deliberately indifferent, (2) to known acts of discrimination, (3) that occurred under its control. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).)[13] Intentional discrimination can be inferred from the deliberate indifference to a "strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (citation omitted). To constitute discrimination under Title VI, harassment must be motivated by a plaintiff's race and be "so severe, pervasive, and objectively offensive, and that so

---

[13]     *Davis* addresses a Title IX claim. Title IX and Title VI operate in the same manner and the Court may consider Title IX cases in considering the application of Title VI. *See Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582, 594-95 (1983); *see also Pruitt v. Anderson*, Civ. No. 11-2143, 2011 WL 6141084, at *2 (D. Minn. Dec. 9, 2011) ("Congress modeled Title IX after Title VI, and courts look to both statutes for guidance.").

undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651.

To prevail on a Title VI claim, Plaintiff must show that an appropriate person at the University had actual knowledge of the alleged harassment so as to alert it to the substantial risk of future harassment. *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017). Actual knowledge can be demonstrated when an appropriate person—one who has authority to address the alleged discrimination and institute corrective measures—has prior notice of a substantial risk of harassment based on previous incidents. *Id.* at 1058 (explaining that a plaintiff failed to plead that the district had actual knowledge and that a plaintiff must allege prior notice of peer harassment based on evidence such as previous similar incidents).

Here, taking the allegations in the Amended Complaint as true, Plaintiff has alleged serious acts of hostility directed toward him. However, Plaintiff has failed to adequately plead that any alleged acts of racial hostility were known by the University and that the University was deliberately indifferent to those acts. Plaintiff repeatedly claims in a conclusory manner that he reported incidents of racial harassment to University staff. Plaintiff fails, however, to provide sufficient specificity to these otherwise conclusory assertions. For example, Plaintiff does not provide details about exactly what behavior he reported to the University. Nor does he specifically name the person to whom he made the reports, information regarding that person's position at the

University, or the date and timing of the reports.[14]  In addition, Plaintiff does not allege

any details with respect to how the University responded to the reports or facts that would

support a finding of deliberate indifference.  Instead, Plaintiff simply repeatedly alleges,

in threadbare fashion, that he "reported the incident to University staff" and that "no

action was taken."

The Court also notes that throughout his Amended Complaint, Plaintiff makes

several allegations purporting to show racial discrimination and harassment that are not

supported by the allegations themselves.  For example, Plaintiff alleges that he was

physically assaulted by a white student at the University, but the attached police report is

from the Chicago Police Department and lists a battery that occurred in Cook County,

Illinois.  Plaintiff also alleged that his psychologist recommended in-person therapy "as a

direct result of" the alleged racial and sexual harassment and discrimination he endured at

the University, but the screenshot of the email containing the recommendation shows a

---

[14]     In two instances, Plaintiff offers some small measure of specificity with respect to
his reports to staff at the University.  First, Plaintiff alleges that he made a report to Paul
Kovacovic, who was on staff at the SCRC.  (*Id.* ¶¶ 21.)  The Amended Complaint alleges
that Plaintiff told Kovacovic that a white professor had accused Plaintiff of plagiarism
and that this was "extremely unusual at the University and never occurred prior in
[Plaintiff's] career at the University."  (*Id.*)  Plaintiff further alleges that Kovacovic failed
to set up a Zoom meeting and "spammed" Plaintiff's phone with advertisements.  (*Id.*
¶ 28.)  Even with this added specificity, Plaintiff has not met his pleading burden—there
is no allegation that the alleged report to Kovacovic involved allegations of harassment
based on race or how any lack of response amounted to deliberate indifference on the part
of the University.  Second, Plaintiff generally lists the SCRC as the office receiving a
different report about racial harassment.  (*Id.* ¶ 29.)  However, that bare level of
specificity is not enough to state a claim of deliberate indifference to harassment because,
again, Plaintiff fails to allege any facts that would show that the University was
deliberately indifferent to racial harassment.

recommendation for a therapy animal and does not mention any alleged discrimination. (Am. Compl. ¶ 19.)  In addition, Plaintiff alleges that a University dining staff member sent him a lewd text that referenced Plaintiff's race, but the text does not contain any mention of Plaintiff's race.  Plaintiff also alleges that Kimani, a University employee and Plaintiff's uncle, sent a message stating "Explore Kenya (middle finger emoji)."  (*Id.* ¶ 36.)  The screenshot contained in the Amended Complaint, however, does not identify the sender of the message.  Finally, Plaintiff alleges that another student posted a meme from the TV show The Simpsons that was a reference to Plaintiff.  But the inference that Plaintiff asks the Court to draw is not supported—the alleged facts simply do not suggest that the posting of the meme was intended to reference Plaintiff or to make any racial statement.  While none of these unsupported allegations in isolation are dispositive of the issues herein, they do undermine the plausibility of Plaintiff's claims against the University.

Taking Plaintiff's allegations in the Amended Complaint as true, the Court concludes that Plaintiff fails to sufficiently allege the elements of a Title VI claim.  To survive a motion to dismiss, Plaintiff is required to plead the elements of his claim beyond conclusory statements.  With respect to the elements of knowledge and deliberate indifference, Plaintiff's bald allegations do not suffice.[15]

---

[15]    Because the Court has held that Plaintiff's Title VI claim fails to state a claim, Plaintiff's claim for damages under Title VI also fails.  The Court declines to address the University's alternative arguments for why Plaintiff's claim for Title VI damages fails.

### III.    Section 1983 Claims (Counts II and VII)

In Counts II and VII, Plaintiff asserts claims under Section 1983 against the University.  Specifically, in the Amended Complaint, Plaintiff alleges that the University violated his civil rights by being deliberately indifferent to violations of his rights such that it created a racially hostile environment.  (Am. Compl. ¶¶ 61-65.)

Section 1983 provides, in part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983 (emphasis added).  Thus, to state a claim under § 1983, Plaintiff must allege that a "person" deprived another of their Constitutional rights.  As a state entity (or arm of the state), the University is not a "person" within the meaning of § 1983.  *See Treleven v. Univ. of Minn*., 73 F.3d 816, 819 (8th Cir. 1996) (affirming district court's entry of summary judgment for the University on the grounds that the University was not a "person" under § 1983; noting that the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983 when sued for damages") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Because the University is not a "person" for purposes of § 1983, Plaintiff's § 1983 claims in Counts II and VII are properly dismissed.

## IV.   Eleventh Amendment Immunity (Counts III, V, VI, and VII)

Plaintiff asserts claims under the MHRA in Counts III and V, a claim for negligence in Count VI, and a § 1981 retaliation claim in Count VII.  The University argues that each of these claims is barred by Eleventh Amendment immunity.  The Court must dismiss an action that is barred by the Eleventh Amendment for lack of subject-matter jurisdiction.  *See Phillips v. Minn. State Univ. Mankato*, Civ. No. 09-1659, 2009 WL 5103233, at * 2 (D. Minn. 2009).

The Eleventh Amendment provides that states and their agencies are immune from suit in federal court, unless the state has consented to be sued, or Congress has abrogated the state's immunity by some express statutory provision.  *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995).  The Eighth Circuit Court of Appeals has held that the University of Minnesota is an agency of the State of Minnesota and is therefore immune from suit in federal court under the Eleventh Amendment.  *See Treleven v. Univ. of Minn.*, 73 F.3d at 818 ("We previously have determined that the University of Minnesota is an instrumentality of the state and entitled to share in the state's Eleventh Amendment immunity.").  Plaintiff has not alleged that Congress has abrogated immunity with respect to the MHRA, negligence, or § 1981 retaliation claim.  Moreover, there is no indication that the University has waived its immunity or consented to be sued.

The Court concludes that the University is immune from the claim asserted in Counts III and VI, and those claims are therefore properly dismissed.  *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 547-48 (2002) (applying Eleventh Amendment

immunity to state-law claims against the Board of Regents); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 969 (8th Cir. 2000) (affirming dismissal of MHRA claims on Eleventh Amendment immunity grounds).  In addition, while Count VII contains a § 1983 claim (discussed above), it appears also to contain a separate retaliation claim under § 1981.  The University is likewise immune from that claim under the Eleventh Amendment.  *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005) (holding that the Department of Corrections is immunized from a § 1981 claim); *Phillips v. Minn. State Univ. Mankato*, 2009 WL 5103233, at * 3 ("Minnesota has not waived its sovereign immunity from § 1981 or § 1983 claims.").

For the above reasons, Counts III, VI and VII (insofar as it asserts a § 1981 retaliation claim) are properly dismissed.

## V.    Fourteenth Amendment (Count IV)

Plaintiff asserts a claim under the Fourteenth Amendment in Count IV.[16]  That claim fails on this motion to dismiss for two reasons.  First, there is no direct cause of action under the Fourteenth Amendment.  *See Wax'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (explaining that a claim may not be brought directly under the Fourteenth Amendment).  Because Plaintiff cannot bring a direct cause of action under the Fourteenth Amendment, Count IV is properly dismissed.  Second, even if the Court were to consider Plaintiff's Fourteenth Amendment structurally as a claim for which

---

[16]    It appears that Plaintiff has dropped his Fourteenth Amendment claim in subsequent proposed complaints.  However, because it is asserted in the operative Amended Complaint, the Court addresses it here.

20

§ 1983 may provide relief, the claim fails for the same reason discussed above with respect to Count II, namely that the University is not a "person" that can be sued under § 1983.

## VI.    Title IX (Count VIII)

Plaintiff brings a Title IX claim against the University, arguing that the University failed to "ensure that students' behavior does not create a sexually hostile environment." (Am. Compl. ¶ 64.)  While not entirely clear, it appears that Plaintiff's Title IX claim is based on allegations that Plaintiff received an unwanted and lewd text message from a University dining staff member.  (*Id.* ¶ 15.)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Plaintiff's claim is premised on harassment.  Similar to the burden to state a Title VI claim discussed above, the University will be liable if it is "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control."  *Ostranader v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003).  To be actionable, the alleged harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victim[s] of access to the educational opportunities or benefits provided by the school."  *K.T. v. Culver-Stockton Coll.*, 865 F.3d at 1057.

Plaintiff asserts that he reported the lewd text to the Equal Opportunity and Affirmative Action office, but he does not provide any details regarding the person to whom he reported the incident, that person's position at the University, or how the

University responded to the report.  For this reason, Plaintiff has not adequately alleged

any deliberate indifference on the part of the University.  Moreover, even acknowledging

the lewd and presumably unwanted nature of the text, the allegations in the Amended

Complaint with respect to a single text do not show "severe, pervasive, and objectively

offensive" discrimination that would satisfy Plaintiff's burden under Title IX.  *Id.* at 1059

(noting that the plaintiff's complaint is limited to an allegation of a single sexual assault,

and although sympathetic to the plaintiff's circumstances and acknowledging that she

alleged "opprobrious misconduct," the singular grievance on its own does not plausibly

allege pervasive discrimination).  Even considering the additional allegations in the

Amended Complaint that could apply to a Title IX claim, such as statements directed at

Plaintiff by other students on campus, on social media, at Chicago's O'Hare airport, and

in other personal interactions with Plaintiff, the Court reaches the same conclusion.

Plaintiff's allegations of alleged sexual harassment do not show that University, through

any deliberate indifference, caused any of the incidents or made Plaintiff vulnerable to

the same.  Indeed, it appears from the allegations that many of the interactions occurred

outside the University's control and involved a variety of situations.  Importantly,

Plaintiff did not sufficiently allege facts to show that he reported the incidents to the

University and the University acted with deliberate indifference to those reports.  Finally,

with respect to the lewd text (which appears to be the basis for Plaintiff's Title IX claim),

Plaintiff's claim fails because Plaintiff only alleges "after-the-fact notice" of an instance

of sexual harassment.  *See id.*

     For the above reasons, Plaintiff's Title IX claim is properly dismissed.

## VII.    Plaintiff's Proposed Amendments to the Amended Complaint

Plaintiff exercised his right to amend "once as a matter of course."  Fed. R. Civ.

P. 15(a)(1).  Plaintiff has now filed four additional motions seeking permission to amend

his Amended Complaint.  Generally, after a responsive pleading has been served, a party

may amend its complaint "when justice so requires."  Fed. R. Civ. P. 15.  However,

"permission to amend may be withheld if the plaintiff does not have at least colorable

grounds for relief . . . ."  *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224

(8th Cir. 1994).  "Good reason to deny leave to amend exists if amendment would be

futile."  *Id*. at 225.  And to deny a motion to amend on the ground of futility "means that

the court reached a legal conclusion that the amended complaint could not withstand a

Rule 12 motion."  *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

As a threshold matter, Plaintiff's proposed amendments do not cure the pleading

and legal deficiencies discussed above.  Plaintiff, for example, seeks to add the names of

certain individuals who allegedly harassed him, details concerning allegations of personal

mistreatment, and other details purporting to support his deliberate indifference claims.

Plaintiff, however, fails to address the legal deficiencies of his claims as explained above.

Plaintiff's proposed amended complaints do not offer material differences to the

allegations supporting his Title VI, § 1983, and Title IX claims.  Therefore, none of these

claims are viably alleged.

In his proposed amended complaints, Plaintiff continues to allege state-law claims

against the University and even seeks to add a breach of contract claim.  However, as

explained in the Court's Eleventh Amendment immunity analysis above, these state-law claims are barred.

Plaintiff also seeks to add individual defendants to this action. These individuals are Katie Koopmeiners ("Koopmeiners"), the University's Associate Director of the Office of Community Standards and the person who addressed Plaintiff's allegations that other students violated the University's Code of Conduct, Ann Marie Schott ("Shott"), a University Equal Opportunity Associate and Deputy Title IV Coordinator and the person who investigated Plaintiff's allegations that University employees violated the University's Code of Conduct, Paul Kovacovic, former ombudsman with the University's Student Conflict Resolution Center, and Paul Kimani, Plaintiff's uncle and a University staff member. Plaintiff asserts all claims against "all defendants."

The claims asserted against these individual defendants are futile. First, insofar as Plaintiff asserts state-law claims against the individual defendants as officials of the University, Eleventh Amendment immunity would apply. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (Eleventh Amendment applies to state-law claims against state officials in federal court); *Treleven v. Univ. of Minn.*, 73 F.3d at 817.

In addition, Plaintiff's proposed federal-law claims against the newly proposed individual defendants are futile. Title VI and Title IX claims against individual defendants are not legally viable. *See Whitfield v. Notre Dame Middle Sch.*, 412 Fed. App'x 517, 521 (3d Cir. 2011) ("Individual liability may not be asserted under Title VI."); *Price ex rel. Price v. Louisiana Dep't of Educ.*, 329 Fed. App'x 559, 561 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1023 (2009) (Title VI claim against individual officials

properly dismissed because "only public and private entities can be held liable under Title VI"). Title IX can be asserted against institutions and programs that receive federal funds, but it has been consistently interpreted so as to not authorize suit against school officials, teachers, and other individuals. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *see also Jenkins v. Univ. of Minn.*, 131 F. Supp. 3d 860, 878 (D. Minn. 2015) (citing *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007)).

Insofar as Plaintiff asserts § 1983 claims against the individual defendants, the claims are also futile. The Eleventh Amendment prohibits federal court lawsuits seeking monetary damages against individual state officers acting in their official capacities. *Treleven v. Univ. of Minn.*, 73 F.3d at 817.

In short, even considering the additional allegations and claims that Plaintiff attempts to add to his various proposed amended complaints, Plaintiff's proposed amendments are futile. Therefore, Plaintiff's motions to further amend his Amended Complaint are properly denied.

## CONCLUSION

While the Court concludes that Plaintiff's Amended Complaint is properly dismissed, the Court does not minimize the severity of some of the allegations in his complaint. The Court's order today simply reflects the fact that Plaintiff has not sufficiently pleaded the causes of action that he attempts to bring against the University.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's motion for an extension of time to respond to the first motion to dismiss (Doc. No. [15]) is **DENIED AS MOOT**.

2.      Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. [28]) is **GRANTED**.

3.      Plaintiff's Amended Complaint (Doc. No. [22]) is **DISMISSED WITH PREJUDICE.**

4.      Plaintiff's Motions to Amend (Doc. Nos. [36, 58, 70]) are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 21, 2024                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge